IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CASSANDRA JERRY,                              *

     Plaintiff,                                *

v.                                            *          Case No. TJS-21-0405

ALLSTATE INSURANCE COMPANY,                   *

     Defendant.                                *

             *     *     *     *     *     *

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss ("Motion") (ECF No. 19) filed by Defendant Allstate Insurance Company ("Allstate").[1] Having considered the submissions of the parties (ECF Nos. 19, 20 & 21), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be denied.

**I.**      **Background**

Plaintiff Cassandra Jerry ("Jerry") filed this lawsuit against Allstate to recover damages for Allstate's alleged failure to act in good faith in handling Jerry's claim for underinsured motorist benefits.[2] ECF No. 4.

According to the Complaint, Jerry's motor vehicle was struck by another motorist on August 6, 2016. *Id.* ¶ 8. As a result of the collision, Jerry sustained bodily injuries, incurred medical expenses, and experienced pain and suffering. *Id.* ¶ 9. At the time of the collision, Jerry was insured

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF Nos. 16 & 17.

[2] Allstate removed Jerry's lawsuit from the Circuit Court for Prince George's County, Maryland to this Court on February 17, 2021. ECF No. 1.

by an Allstate policy that provided underinsured motorist coverage, "which obligated Allstate to pay Plaintiff all sums she was legally entitled to recover as damages against the owner and/or operator of an underinsured motor vehicle causing her bodily injury." *Id.* ¶ 22. To the extent that Jerry's damages exceeded the liability limits of the other motorist's coverage, her Allstate policy provided that she could claim damages under the underinsured motorist provisions of her own policy, subject to the policy limit of $100,000 per person and $300,000 per incident. *Id.* ¶ 23. After the other motorist's insurance company tendered the $30,000 policy limits of coverage to Jerry as a settlement of her claim against the other motorist, Jerry sought to recover the $70,000 balance under her policy limits from Allstate. *Id.* ¶ 28. Allstate notified Jerry that it would not offer any money to her under the underinsured motorist coverage of her policy because her "damages did not exceed the $30,000.00 already tendered" by the other motorist's insurance company. *Id.* ¶ 30.

On September 28, 2018, Jerry filed a lawsuit against Allstate in the Circuit Court for Prince George's County, Maryland, alleging that Allstate was liable for breach of contract for failing to pay underinsured motorist benefits to her in connection with the August 2016 collision. *Id.* ¶ 32. The case proceeded through discovery and ultimately went to trial. *Id.* ¶ 34. During discovery, both parties designated medical experts to render opinions on the extent of Jerry's damages. *Id.* ¶¶ 35-36. The parties' experts were deposed during discovery (in August and October 2019) and in *de bene esse* depositions (in January 2020). Jerry's experts, both of whom were her treating providers, testified that Jerry's neck was susceptible to injury because of surgery performed four months prior to the collision, that the collision had aggravated her neck, that she sustained a permanent injury, that objective anatomical changes to her neck as a result of the collision were visible on her cervical MRI, and that Jerry had experienced increased pain as a result of the collision. *Id.* ¶¶ 38-41.

On November 4, 2019, about one year after Jerry filed her lawsuit in state court, Jerry sent a letter to Allstate demanding that it tender its policy limits of $70,000 as a full and final settlement of Jerry's claim. *Id.* ¶ 42. Jerry included copies of her medical records and bills and noted that her past medical expenses alone totaled $60,000. *Id.* Allstate did not immediately respond to Jerry's demand letter. *Id.* ¶ 43. Jerry re-sent the demand letter to Allstate on December 16, 2019. *Id.*

One day before the scheduled trial date, on January 7, 2020, Allstate offered to settle Jerry's claim for $1,840.49. *Id.* ¶ 44. Jerry rejected this offer. *Id.* ¶ 45. After a three-day trial, the jury returned a verdict in favor of Jerry in the amount of $310,505.23, including $60,505.23 in past medical expenses and $250,000 in non-economic damages. *Id.* ¶ 46. The state court reduced the award to $70,000, the policy limits of Jerry's coverage. *Id.* ¶ 47.

While the state court lawsuit was pending, and sometime "[s]hortly before the start of the trial," Jerry filed a general consumer complaint with the Property & Casualty Unit of the Maryland Insurance Administration ("MIA"), as required by Md. Code, Ins. § 27-1001. *See* ECF Nos. 19-1 at 2-3 & 19-2. By letter dated August 7, 2020, about eight months after the state court trial, the MIA notified Jerry of its finding that Allstate did not violate Maryland insurance law in connection with Jerry's claim. ECF No. 19-3.

## II.   Discussion

Allstate moves to dismiss this case under Fed. R. Civ. P. 12(b)(6) for two reasons. First, Allstate argues that Jerry's claim is barred by the rule against claim splitting. Second, Allstate argues that Jerry has failed to state a claim upon which relief can be granted.

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

### A.    Res Judicata

Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[3] *Montana v. United States*, 440 U.S. 147, 153 (1979); *see SAS Inst., Inc. v. World Programming Ltd.*, 847 F.3d 370, 378 (4th Cir. 2017); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). Res judicata is a "'practical' doctrine" that asks "whether the party has previously had a fair shot with respect to the claims raised in the present action." *SAS Inst.*, 847 F.3d at 378 (citation omitted). The doctrine "protects litigants from vexatious litigation, conserves judicial resources, promotes efficiency, and minimizes the risk of inconsistent judgments." *Panghat v. Baltimore Veterans Affs. Med. Ctr.*, No. ELH-19-994, 2019 WL 7281952, at *12 (D. Md. Dec. 27, 2019).

---

[3] In its Motion, Allstate argues that Jerry's claim in this case is barred by the doctrine of claim splitting. Like res judicata, claim splitting prohibits a plaintiff from prosecuting a case piecemeal, and requires that all claims arising out of a single wrong be presented in one action. *Jaigobin v. U.S. Bank, NA*, No. DKC 18-1776, 2019 WL 4598000, at *3 (D. Md. Sept. 23, 2019). "Unlike res judicata, however, a final judgment in the first suit is not required to bar the second suit." *Id.* Here, there is no dispute that a final judgment has been entered in the prior state court case. As such, the Court analyzes Allstate's argument under the more familiar doctrine of res judicata.

4

This case was removed to this Court based on diversity jurisdiction. Where a federal district court's jurisdiction is based on diversity, "district courts apply the res judicata rules of the state court that rendered the prior judgment." *Pittman v. Deutsche Bank Nat'l Tr. Co.*, No. GJH-18-2425, 2019 WL 3717821, at *3 (D. Md. Aug. 5, 2019) (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982)); *Panghat*, 2019 WL 7281952, at *12 ("When considering the preclusive effect of an earlier state court judgment on a new claim, courts apply the preclusion law of the State in which judgment was rendered.") (internal quotation marks and citation omitted); *W. Maryland Wireless Connection v. Zini*, 601 F. Supp. 2d 634, 640 (D. Md. 2009). Because the prior judgment was rendered in Maryland state court, Maryland law applies here.

Under Maryland law, "the res judicata doctrine 'embodies three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.'" *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140 (2012) (quoting *R & D 2001, LLC v. Rice*, 402 Md. 648, 663 (2008)). "The elements of res judicata under federal law are analogous to those under Maryland law." *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 108 (2005); *see also SAS Inst.*, 847 F.3d at 378 (describing federal res judicata test); *Providence Hall Assoc. Ltd. P'shp v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016); *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013).

The first and third element are satisfied here: the parties in this case are identical as in the prior state court lawsuit and a final judgment has been entered in that case. The second element is in dispute.

"To determine whether a cause of action is 'identical' for the purpose of res judicata, the Fourth Circuit and Maryland both apply a 'transactional' approach." *Panghat*, 2019 WL 7281952, at *13 (citing *Schwartz v. J.J.F. Mgmt. Serv., Inc.*, 922 F.3d 558, 566 (4th Cir. 2019); *SAS Inst.*, 874 F.3d at 378-79; *Clodfellter*, 720 F.3d at 210; *Norville*, 390 Md. at 108-09; *Kent Cty Bd. of Educ. v. Bilbrough*, 309 Md. 487, 499-500 (1987)). "The transaction test provides that a claim is identical if it arises out of the same transaction or series of transactions as the claim resolved by the prior judgment and the claims could have been brought in the earlier action." *Panghat*, 2019 WL 7281952, at *13 (internal quotation marks omitted). "Put simply, the suits are identical where the claims asserted in both actions are based upon the same set of facts such that, ordinarily, one would expect them to be litigated simultaneously." *Id.*

Allstate argues that Jerry's claim for breach of contract in the prior state case and her first-party bad faith claim[4] in this case arise from the same transaction, and are thus "identical" for the purpose of res judicata. Allstate notes that while there are no cases directly on point in Maryland, the decision of *Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714 (Iowa 2016), provides persuasive analysis. In *Villarreal*, as in this case, an insured brought a first-party bad faith claim against their insurer after the insured had already received judgment against the insurer for breach of contract. Applying the same transactional approach that is applied in Maryland, the court in *Villarreal* held that a "first-party bad-faith claim based on denial of insurance benefits without a reasonable basis ordinarily arises out of the same transaction as a breach-of-contract claim for

---

[4] Other courts have noted that Maryland does not recognize a claim for "bad faith" failure to pay an insurance claim. *See, e.g. Schwartz*, 2021 WL 1060289, at *3. Technically, Maryland only recognizes a claim for an insurer's "failure to act in good faith." Regardless of whether there is a difference between acting in bad faith and failing to act in good faith, the Court will use the terms interchangeably in this opinion.

denial of those same benefits." *Id.* at 729. In reaching this conclusion, the court noted that this was the approach of nearly every other court to have addressed the issue. *Id.* at 722-25. The court also made note of two exceptions to the approach. *Id.* at 725. First, when the bad-faith claim is based on conduct that occurred after the breach-of-contract case was filed, the two claims cannot be considered identical for res judicata purposes. *Id.* at 725, 729. Second, where the bad-faith claim only accrues after the insured has prevailed on an underlying claim for the denial of policy benefits, the two claims are not considered identical. *Id.* at 725. Neither of those exceptions applied to the circumstances in *Villarreal.*

The court's decision in *Villarreal* is well reasoned but the facts of this case are distinguishable. Here, accepting the well-pled allegations of the Complaint as true, Jerry's first-party bad faith claim principally arose from Allstate's handling of the medical evidence and expert opinions disclosed during discovery in the prior lawsuit. *See* ECF No. 4 ¶¶ 35-42. Jerry alleges that the expert evidence was so clearly in her favor that if Allstate had been acting in good faith, it would have paid out her claim. Because Jerry's bad faith claim is largely based on Allstate's conduct during the prior lawsuit, it is not part of the same transaction as her prior breach of contract claim. Accordingly, the claims are not identical for res judicata purposes. Allstate's Motion to Dismiss on the basis of res judicata is **DENIED**.

The Court does not need to reach Jerry's argument that her first-party bad faith claim was not ripe at the time of the trial of her prior breach of contract claim. ECF No. 20-1 at 8. This argument necessarily turns on the timing of Jerry's exhaustion of her administrative remedy with the MIA, which depends on when Jerry learned of the facts giving rise to her bad faith claim. Because the Court has already found that Jerry did not discover the core facts of her bad faith claim

until midway through discovery in her prior breach of contract case, she was necessarily unable to exhaust her administrative remedy before she filed the complaint in that case.

B.      **Failure to State a Claim**

Jerry has stated a plausible claim for relief in this case. Under Maryland law, insurers have a duty of good faith performance under insurance contracts. *See Dominant Investments 113, LLC v. United States Liab. Ins. Co.*, 247 F. Supp. 3d 696, 704 (D. Md. 2017) (citing Md. Code, Cts. & Jud. Proc. § 3-1701). "'Good faith' means an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." *Id.*; *see also* Md. Code, Ins. § 27-1001. "[F]ailure to act in good faith in denying insurance coverage, under [Md. Code, Cts. & Jud. Proc.] C.J. § 3-1701 and its companion, Ins. § 27-1001, is a State statutory cause of action created in 2007." C*lass Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. ELH-16-3431, 2018 WL 1471682, at *10 (D. Md. Mar. 23, 2018) A claim under C.J. § 3-1701 is ordinarily subject to an administrative exhaustion requirement with the MIA. *Id.*

"Judges in this District have routinely employed a 'totality of the circumstances' test" to examine first-party bad faith claims in Maryland. *Schwartz v. Travelers Prop. Cas. Ins. Co.*, No. SAG-20-1919, 2021 WL 1060289, at *3 (D. Md. Mar. 19, 2021). That test includes the following factors:

> [(1)] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [(2)] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [(3)] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

*Id.* (quoting *Barry v. Nationwide Mut. Ins. Co.*, 298 F. Supp. 3d 826, 830 (D. Md. 2018)).

"To assess those factors, courts consider 'the insurer's efforts to obtain information related to the loss, accurately and honestly assess this information, and support its conclusion regarding coverage with evidence obtained or reasonably available.'" *Id.* (quoting *All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F. Supp. 3d 409, 416 (D. Md. 2014)). "[T]he determination as to good faith focuses on the time at which the insurer's decision was made, not at a later point in subsequent litigation when all involved have the benefit of additional evidence." *Id.*

Jerry met the administrative exhaustion requirement of the relevant statutes by filing the necessary complaint with the MIA before filing this lawsuit. *See* Md. Code, Ins. § 27-1001(d). After the MIA rendered a decision adverse to Jerry, Jerry filed this lawsuit, as permitted by C.J. § 3-1701(c).

Accepting the allegations of Jerry's Complaint as true, she has stated a plausible claim for relief. In sum, Jerry's Complaint alleges that Allstate refused to pay to Jerry what she was due under the terms of her policy, even in spite of "clear and overwhelming evidence" of her damages. ECF No. 4 ¶ 49. Specifically, Jerry alleges that Allstate was aware of the expert opinions of Jerry's treating providers regarding the cause and extent of her injuries but that Allstate failed to properly consider these opinions in handling Jerry's claim. *Id.* ¶¶ 36-41. Allstate is correct that insurers are not required to uncritically adopt the expert opinions of a policyholder's experts, but this argument misses the point. Jerry has alleged that Allstate failed to make an informed judgment based on honesty and diligence in handling her claim based on the totality of the circumstances, including in considering the evidence provided by Jerry's medical providers. Jerry also points to other circumstances that suggest Allstate did not handle her claim in good faith, including Allstate's total reliance on its own experts (one of whom is in the business of "litigation-related medical work" and the other "who rarely treats patients"). This, combined with the other allegations of

Jerry's Complaint, is sufficient to state a claim for Allstate's failure to act in good faith in handling her insurance claim. For these reasons, Allstate's Motion to Dismiss on the basis of failure to state a claim is **DENIED**.

III.    **Conclusion**

For the reasons stated above, Allstate's Motion to Dismiss is **DENIED**. Allstate shall file an answer to Jerry's Complaint within 14 days of the date of this Memorandum Opinion and the accompanying Order. Once the answer is filed, the Court will enter a scheduling order.

August 11, 2021                                        /s/
Date                                              Timothy J. Sullivan
                                                  United States Magistrate Judge

10